## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 23-cr-181 (TSC)** |
| | : | |
| **AYOMIDE SOLOMON FETUGA,** | : | **FILED UNDER SEAL** |
| | : | |
| **Defendant.** | : | |

## STATEMENT OF THE OFFENSE AND RELATED CONDUCT

## I. THE ELEMENTS OF THE OFFENSES

**Conspiracy To Commit Wire Fraud and Mail Fraud:** The essential elements of Conspiracy To Commit Wire Fraud and Mail Fraud, in violation of 18 U.S.C. § 1349, are:

(1) Two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit wire fraud and mail fraud; and

(2) The defendant knew the unlawful purpose of the plan and willfully joined in it.

The essential elements of Wire Fraud, in violation of 18 U.S.C. § 1343, are:

(1) The defendant knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises;

(2) The false or fraudulent pretenses, representations, or promises were about a material fact;

(3) The defendant acted with intent to defraud; and

(4) The defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.

The essential elements of Mail Fraud, in violation of 18 U.S.C. § 1341, are:

(1) The defendant knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises;

(2) The false or fraudulent pretenses, representations, or promises were about a material fact;

(3) The defendant acted with intent to defraud; and

(4) The defendant used the United States Postal Service by mailing or by causing to be mailed something meant to help carry out the scheme to defraud.

## II. <u>FACTUAL BASIS</u>

Had this case proceeded to trial, the government would have proven the following facts beyond a reasonable doubt:

1.    At all relevant times, the defendant AYOMIDE SOLOMON FETUGA ("FETUGA") was a citizen of Nigeria and a resident of Texas.

2.    The United States Agency for Global Media (USAGM) was an agency of the federal government.  USAGM is headquartered in Washington, D.C.

### A. The Conspiracy

3.    Beginning in or about September 2021, the official government email account of USAGM's Senior Procurement Executive ("EMPLOYEE 1") was accessed without authorization by an unknown co-conspirator, who changed the "Reply To" field within the header data of the email to a private email address corresponding to an email domain which closely resembled the official USAGM domain.  EMPLOYEE 1's office is located in Washington, D.C.  The unknown co-conspirator used EMPLOYEE 1's email account without EMPLOYEE 1's knowledge or authorization to send at least hundreds of fraudulent emails containing request for quotations to numerous government vendors.  A request for quotation is an invitation for a vendor to provide a proposed price to sell specified goods to the customer (in this case, to USAGM).

4.      The object of the scheme was to defraud vendors into shipping goods to members of the conspiracy without payment, while deceiving the vendors into believing they were shipping goods to USAGM and would receive payment from USAGM.

5.      One of the recipients of the fraudulent emails sent from EMPLOYEE 1's account was a company ("COMPANY A") located in New York City, New York. The request for quotation contained in the fraudulent email requested 38 Surface Pro computers. An undercover law enforcement agent posing as a representative of COMPANY A sent a quote via email using the "Reply To" function.  The undercover law enforcement agent called an unknown co-conspirator posing as EMPLOYEE 1 who requested the items be shipped to a specific individual ("PERSON 1") at a store in West Mifflin, Pennsylvania.  The undercover agent provided a Purchase Order for the sale of 38 Surface Pro computers for $113,050.00, to be shipped to the designated address in West Mifflin, Pennsylvania.  The undercover agent provided a U.S. Postal Service tracking number to the unknown co-conspirator posing as EMPLOYEE 1.

6.      On November 15, 2021, law enforcement agents conducted a controlled delivery of the package shipped via the U.S. Postal Service to West Mifflin, Pennsylvania.  The package was accepted for delivery by PERSON 1.  Law enforcement conducted a voluntary interview of PERSON 1, who stated that he was directed by a female associate he met online to receive the package and then ship it to FETUGA, at an address for an apartment in Garland, Texas.

7.      Further on November 15, 2021, law enforcement agents provided PERSON 1 with a tracking number to provide to the female associate he met online, which PERSON 1 did on or about the same date.

**B. FETUGA's Role in the Conspiracy**

8.      In or about late 2020, in order to earn money, FETUGA reconnected with friends he knew in Nigeria who were involved in various fraud schemes.

9.      In or about November 2021, FETUGA was contacted by an individual known to him as YINKA QUADRI, a/k/a LABASCO ("LABASCO"), a high school friend of FETUGA's who was residing in Lagos, Nigeria.  LABASCO asked if FETUGA could help him with a package containing computers.  LABASCO communicated with FETUGA mostly through voice or text messages using the encrypted messaging application WhatsApp.

10.      Specifically, LABASCO requested that FETUGA receive a package containing computers on LABASCO's behalf and then ship them to LABASCO in Lagos, Nigeria.  FETUGA asked if the computers were stolen, and LABASCO said no.  However, FETUGA believed that the computers were stolen, and FETUGA was aware that the computer delivery was part of a fraudulent scheme.

11.      When FETUGA explained to LABASCO that he did not have the money to ship the computers to Nigeria, LABASCO directed FETUGA to sell two of the computers. LABASCO told FETUGA he could split the profit of one computer 50/50 with LABASCO and use the money from the sale of the second computer to ship the remaining computers to LABASCO in Lagos, Nigeria.

12.      LABASCO provided FETUGA with the tracking information for the package being sent from West Mifflin, Pennsylvania to FETUGA's address in Garland, Texas.  FETUGA checked this tracking number twice from his phone.

13.      On December 13, 2021, law enforcement conducted a second controlled delivery of the package shipped via the U.S. Postal Service to FETUGA, at the address provided by

4

PERSON 1 for an apartment in Garland, Texas. The package was left on the doorstep of the specified address.  FETUGA opened the door to retrieve the package, then took the package and moved it inside the apartment in his bedroom.

14.     Earlier on the same date, December 13, 2021, LABASCO sent FETUGA a voice message via WhatsApp.  LABASCO had sent FETUGA numerous messages, mostly via WhatsApp, about the package since it was shipped, including that day. FETUGA was supposed to record a video of himself opening the package as proof he received it and send the video to LABASCO.

15.     Following the above-referenced delivery, LABASCO sent FETUGA a message stating that LABASCO's boss wanted to know where the package was.  LABASCO's boss contacted FETUGA from an American phone number asking about the laptops.  FETUGA told him he did not receive the package.  LABASCO later sent photos to FETUGA purportedly showing that LABASCO's boss had assaulted LABASCO over the laptops.

16.     LABASCO had previously asked for FETUGA's assistance in receiving and sending money for other schemes.  However, LABASCO wanted all of FETUGA's personal information and access to FETUGA's accounts.  FETUGA was uncomfortable with these requests and did not go through with them.

## III. <u>CONCLUSION</u>

17.     FETUGA waives any challenge to venue in the District of Columbia.

18.     The facts contained herein are not complete in all details.  Instead, they are provided in order to demonstrate that the elements of the charged offense have been met for purposes of a plea in this case.  These are not all of the facts known to the defendant and to the government.

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052


BY:    /s/ *Christine M. Macey*
Christine M. Macey
D.C. Bar No. 1010730
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7058
Christine.Macey@usdoj.gov

6

## Defendant's Acceptance

I have read this Statement of the Offense and carefully reviewed every part of it with my attorney.  I am fully satisfied with the legal services provided by my attorney in connection with this Statement of the Offense and all matters relating to it.  I fully understand this Statement of the Offense and voluntarily agree to it.  No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.  No agreements, promises, understandings, or representations have been made with, to, or for me other than those set forth above.

Date: 05/02/2023

_____
Ayomide Solomon Fetuga
Defendant

## Defense Counsel's Acknowledgment

I have reviewed every part of this Statement of the Offense with my client.   It accurately and completely sets forth the Statement of the Offense agreed to by the defendant and the Office of the United States Attorney for the District of Columbia.

Date: 5/2/2023

_____
Eugene Ohm, Esq.
Attorney for Defendant